Neil Gary Rosenweg is here for the Appellant Lightsey. Holly Lynn Gershaw is here for the United States. And Michael Doman is here as Amicus Counsel for the United States District Courts Order. And Mr. Rosenweg, you may begin your argument. Good morning, and may it please the Court. The United States v. Taylor Supreme Court held that crimes that can be committed by a threat of force do not categorically require the use, attempted use, or threatened use of force. Taylor therefore When you objected at the District Court, though, you didn't say, Your Honor, I object to the enhancement because the United States Court of Appeals might abrogate our decision and the United States v. Taylor. You weren't specific enough. Well, Your Honor, I'm not sure that that's accurate. They certainly, Lightsey made the argument in the District Court that his crime was not a crime of violence under the ACCA. And he said that he did so in order to preserve the argument in case the law changed, which attorneys have been doing for thousands and thousands of cases without any problem. I think the Bortzakis case holds that once the defendant has done that, he's free to argue anything in the appellate court as to why his . . . That's correct, Your Honor. Let me ask you this. Do you have an example, and if so, what is your best example of a case of ours in this court where we had held that a specific state statute was a crime of violence or was a violent felony, where an intervening Supreme Court decision came out on a different statute, and where we have said that that in and of itself, without any further analysis, is an abrogation of intervening law such that we do not follow our prior panel precedent? Could you repeat that, Your Honor? Will, can you give me an example of a case, a single one, and if there's more, then your best one, where our court has held in case number one that a crime is a violent felony under the Armed Career Criminal Act, where then the Supreme Court in an intervening decision says that a separate statute in a separate state is not a violent felony, and where we, in case number two, have said, without any further analysis, that because the statute name is the same in the intervening Supreme Court case, that that abrogates case number one, no further questions asked? I'm not sure that I can do so, Your Honor. There isn't one, is there? Not without significant further research, not only into the appellate . . . Well, I know you've looked, because I read all of your briefs, and you pointed out abrogations in cases dealing with methodologies that have changed, but I haven't seen one where there is a related statute, not the statute that we've held to be a violent felony, but a related statute that, later on, we've said that that alone, without any further analysis, is an abrogation such that we need not follow our very strong ironclad prior panel precedent rule. Well, I certainly think that Archer points to several cases in this court where an intervening opinion or a subsequent opinion by the Supreme Court has abrogated . . . And so, in Archer and the cases it points to, those deal with cases, and correct me if I'm wrong on this, because I've looked at all of them, deal with the instance of court, you are applying the categorical rule in one way, and we are now saying that the categorical rule should be applied a different way. In that instance, we have said that where we relied on the prior method, that has been abrogated and we need to rely on the new method. Is that . . . Does that . . . Am I characterizing that correctly, and if I'm not, tell me why. Well, I'm not sure that you are, and the reason why is because Archer points to cases, several of which I cited in one of my briefs, or more than one of my briefs, where the prior precedent of this court was deemed to be no longer controlling, no longer good law, overruled, abrogated. But why? I guess, you're right, Archer certainly said that, and there are examples where we have done that. Right. I mean, the iron . . . Our ironclad rule is not so ironclad that there isn't an exception, but the exception seems to be a narrow one. And in Archer and other cases you cite, it seems to be that where we've done that, we've done that where the methodology of how we applied either the modified categorical approach or the categorical approach, or how we determine the least culpable felony, the way that we've gone about applying has changed. But can you give me an example of one where we've said, simply because the Supreme Court said a related felony that has a similar name to an earlier felony is not a crime of violence, that that means that every other of that similar group of felonies in the entire country is no longer a crime of violence? Well, you've repeated methodology now. And if you mean by methodology the reasoning that the higher court employed . . . The way in which we go about applying the categorical approach, because that has . . . Let me characterize it as nicely as I can. Has evolved from the early Taylor case in 93, not the Taylor case you're talking about, to how we do categorical approach now. And so with each instance, with Mathis, with the Champs, with others, we've sort of said, okay, we did it wrong here, and so we have to do it right now. But that seems to be different than the argument you're making. What you're saying is, Supreme Court said that attempted Hobbs Act robbery is no longer a violent felony, so any other attempted robbery in Florida or really wherever, because attempted robbery is not a violent felony means attempted robbery is not a violent felony, or any attempt is not violent. How can that . . . Show me a case where we've applied our prior panel precedent to that logic. Again, I don't know that I have an exact case for you, Your Honor. But if I may respond . . . Let me ask you about one case, though. Yes, go ahead. Okay, so Summers is a recent case. Summers dealt with aggravated assault. And we had held in a bunch of prior cases that Florida aggravated assault was a violent felony. The Supreme Court, in a case called Borden, comes along and then says, aggravated assault in Tennessee is not a crime of violence. And then the case comes back to us, and someone makes the argument you're making, which is, hey, Borden abrogated all these prior cases dealing with Florida aggravated assault. And what did we do in that case? Well, I'll tell you what we did, because I don't want to put you on the spot. What we did is not say, well, it's abrogated. It's done. That's it. Over. Same crime. So it has to be. What we said is, we analyzed Florida law. There were some difficulties in Florida law. And we asked the Florida Supreme Court, is your statute the same as the statute in Tennessee? And the Florida Supreme Court came back to us and said, no, it's not. Our intent requirement is different than the Tennessee one. And so we said, it's not abrogated. Why should we not do something similar by looking at state law, seeing if it's different than the crime that was there for the Supreme Court, and then determining whether it was abrogated or not? Because the two statutes, the Federal Hobbs Act and Florida's armed robbery statutes are not materially different. Here's how I understand the elements. Elements are how we look at these things, right? That's the categorical approach. So the Supreme Court said in Taylor that attempted Hobbs Act robbery has two elements. Quote, the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force. And two, he completed a substantial step towards that end. The crime here, attempted armed robbery, in the Supreme Court's case of Frank, in Florida's Supreme Court's case of Frankie, identified the elements as following. One, the formation of an intent to commit the crime of robbery. That I agree with you seems to be similar. Two, the commission of some physical act in furtherance of the robbery. That is very different. And three, the most different of all is the use of a firearm in the commission of that act. I mean, those are very different elements. Now it may be that if we were to do this anew, that I may agree with you that this shouldn't be a crime of violence. But how can we say that where the elements are that different, that one inherently abrogates the other just because it shares a similar name? Because I think that the elements should not be characterized in quite the manner that you do. I read you a quote from each of the two cases. I understand that, but first of all, we're talking about attempted armed robbery here and not the completed crime of robbery. And for both statutes, robbery requires, as you say, the taking of property with the use of force, or the attempted use of force, or the threatened use of force. And those elements are present in the Florida law, too, even if not worded exactly the same. Commission of a physical act and the floor, may I ask a follow-up question? Thank you, Judge Wilson. So just to put one finer point on it, and then I'm finished on my end. And apparently so am I. Well, we'll see. You can ask our presiding judge for more time. But what the Florida courts have said in a case called Hudson, that there are at least, and this is distinguishing federal attempt from state attempt, quote, there are at least four approaches to the analysis of attempt, proximity, probable desistance, equivocality, and substantial step. The substantial step approach is authorized by the Model Penal Code. That Model Act has not been adopted in Florida, and it is doubtful that we would utilize that approach in the absence of the Model Act statutory language. How can we say that one that requires substantial step is different than the physical act that's required by attempt in Florida as dictated by the Franke decision? Judge Wilson? Answer the question. Joiner, which is the case that we take greatest exception to, stated that Florida law on attempt tracks federal law on attempt. I don't think you need much more than that to say, and the attempt portion is where the crux of the Taylor case was. It's not whether a completed armed robbery is a crime of violence under the ACCA. It's whether the attempt is. And under both Florida and federal law, it's not categorically a crime of violence because the government doesn't always have to prove that there was a threat of force. Thank you. All right. Thank you, Mr. Rosenwag. Ms. Gershaw for the United States. Good morning, Your Honors. May it please the Court. Holly Gershaw on behalf of the United States. We essentially agree that this offense doesn't qualify as a crime of violence, but I do want to take a couple moments to talk about where our approach differs from my friends. Can you answer my question, and you may not have an answer to it or you may, but the question I start off by asking is, do you know of a case where we have said that case one, we've said a felony under state law is a violent felony under the ACCA. Intervening Supreme Court case that said another statute in another jurisdiction that has the same name or a similar name is not a crime of violence. And then case three, where we said that that alone is enough to abrogate. Well, I do think I want to talk about the Summers case. Do you know of any case? Not that, not specifically on point, but there are two cases I want to talk about. Actually, let me start first with the Babb case, because in the Babb case, although it's not in obviously in the violent felony context, it was- It's not even close. Babb is an employment discrimination case. No, I understand that, Your Honor, but what the court in Babb said is it interpreted one provision of the ADA based on the language of that statute. Then it looked at a similar statute and interpreted that same phrase and said that that abrogated the decision in Tusk, Trask, because they were basically the same statutes and that reasoning- But counsel, even if I just showed you the language of the Hobbs Act robbery statute and the armed robbery statute, the language is so far different. Is it not? No, Your Honor. I disagree. Tell me how you disagree with that statement that if I read to you the language of the actual Hobbs Act robbery, that that language is so close and identified, it's exactly the same such that it should be interpreted the same as Florida's definition and how it defines attempted robbery, armed robbery. Because both deal with the essential ... They can be committed by force, attempted force, or in the Hobbs Act context, threatened force, or in the Florida context, putting in fear. An attempt statute is either a substantial step or an overt act. As my friend pointed out in Joyner, this court said that the substantial step and the overt act are basically the same- It seems really odd to me that both of you are up here saying Joyner is abrogated and then are telling me at the same breath that we should apply Joyner. Because Joyner is abrogated because Joyner relied on the syllogism that because the underlying crime constituted a violent felony, a crime of violence, that therefore the attempt crime also qualified without any further analysis. And Taylor- Let me be clear. Joyner may be wrong and the cases it relies on may be wrong, but that's the separate question from what we have here. Now, your amicus counsel has pointed out, and I've read part of it here, that the Florida court seemed very clear that Florida applies a different attempt as a matter of state law than the federal does. Is that true or not true as a matter of state law? As a matter of state law, I don't think that that one intermediary court sets forth exactly what the standard is based on. It may or may not, although it seems pretty comprehensive to me. But fine, let's look at Frankie. Counsel, let's look at Frankie, because Frankie does define as to this crime, not attempt in general, but as to this crime, and it requires both the commission of a physical act in furtherance of the robbery. So not just a substantial step, but a physical act itself. And secondly, use of a firearm. How are those things, whether in the end, if we were to look at this anew, if that would get us to some place, that might be a different story, but how does that put us in different territory and land than attempted Hobbs Act robbery, which requires neither a physical act nor the use of a firearm? So in Hudson, that was a case in which there was an undercover sting operation, and the defendant traveled to a joint location and met with the purported mother of a fictional child, and there were many steps that had to be completed before the defendant would have the opportunity to sexually batter the child. And the court in that case distinguished from cases in which the defendant travels all the way to meet with the child, and the only thing that separates the attempt from the completion is the fact that he was arrested before he had the chance to batter the child. And so under Florida law, it is enough of an overt act to travel somewhere with the intent to commit the crime. And that is the hypothetical that was given. So I understand. In Frankie, which is the key Supreme Court case interpreting the elements of this crime, it requires a commission of a physical act, in furtherance of the robbery, and the use of a firearm. Those are two elements that are simply not required by attempted Hobbs Act rivalry, whether you look at the statute or whether you read Taylor itself. How does that alone not put us in a different territory, such that one does not necessarily abrogate the other? Now, looking at it anew, I might agree that we would get there. Would the answer be because the use can be determined to mean discharging the weapon, and that doesn't require that it be used against the person of another? Correct. And it also just requires the carrying of the weapon. So it's enough that the weapon was left in the car, and when they arrested the person during the escape, found the firearm. So there's no... So you can use the firearm without using it against the person of another, which is necessary under the ACCA. Is that your answer to the question? Yes. And also to go a step further, it doesn't even need to be used as part of the commission of the offense. It can be merely carried during the escape or carried during the preparation. And again, I think that the reason that Taylor abrogates Joyner is because Taylor eviscerates the fundamental prop of Joyner, which is that an attempt crime can qualify merely because the underlying crime has qualified. So that part of Joyner is no longer good law. And then you get to the next step, and you look at it, you can say, okay, so we can't rely on this syllogism, so now we have to look at the underlying law. And Taylor gives a hypothetical and says, in this hypothetical, this offense can be committed without the use, attempted use, or threatened use of violence. And if you look at that hypothetical, and you look at Florida law, it is clear that this crime, the hypothetical crime in the Adam case, would qualify as attempted armed robbery under Florida law. And so, in light of Taylor abrogating Joyner's- How is that true when there's no physical act? There is a physical act. The physical act is driving to the- Oh, that's not a physical act. Come on. That's not a physical act. Well- Not in furtherance of the commission of the robbery. Come on. I mean, under Florida law, there are cases that say when somebody drives to the bank, or I'm sorry, to the store and is arrested prior to the commission of the offense, that constitutes- Okay, what case? The Grant case. So in that case, the physical act was pulling at the door so hard that it shook the store such that employees were scared and yelled at the manager, do not let that person in. But I wouldn't say that that was a threat. That was the physical act. First of all, that's an intent case, not a physical act case. The issue there was intent, not physical act. But clearly there was a different physical act in that case than here. I want to- You have very little time left. I want to talk about Summers because it seems to me that if you compare just the language of the Tennessee statute and the Florida statute, they were pretty on point. And it would have been really easy for us to say, okay, well, you know, the Supreme Court said aggravated assault in a statute that seems pretty similar is here. So that's abrogated, right? It's the same logic that we have here. And yet what we did was say, no, there's some indications that the elements are different, that intent is interpreted differently, to the point that we're going to ask the Florida Supreme Court the question, why would we not do something similar or do a similar analysis here? I think that's a fair analysis. I would push back on the idea that if Joyner isn't abrogated, you can't ask the Florida Supreme Court what the elements of the crime are because Joyner already said this offense qualifies. So you have to say that Joyner is abrogated to the point at which it no longer applies. No, what we did in Summers is we said we weren't sure if it abrogated, so we're going to ask the question to see if the elements are different. And here, we don't really need to do that because the Florida Supreme Court has already told us what the elements are, and they are different. But even if we didn't, even if we still weren't sure, wouldn't it be worth asking to say, is substantial step the same? Is attempt the same? Because if it's not the same, then it would seem that there would be no abrogation, would there not? Let me ask you this. If the Florida Supreme Court came back to us and said, our attempt is different than federal attempt, we are not the Adam case. If they said we are not the Adam case, then I would agree. If they just said it's different, then you'd have to still- Isn't there at least some question under Florida law, given that we're having this very intelligent discussion here about all this? I mean, our position is no, there's not, but I understand- I know your position, but I'm asking you as Ms. Gershow, who's standing here in front of me. Is there not some question that would be worth asking at least? You're not opposed to certifying, correct? No, Your Honor, although I think that our position, if we were arguing it to the Florida Supreme Court, would be that under the Adam hypothetical would qualify as an attempted robbery under Florida law. Thankfully, we had someone from the Solicitor General's Office of the State of Florida arguing something else. Thank you. All right. Thank you, Ms. Gershow, Mr. Doman, Ms. Amicus, for the District Court order. Good morning, Your Honors, and may it please the Court. Michael Doman, as Court-Appointed Amicus. I understand my role to be to defend the District Court's sentence with respect to whether Mr. a violent felony under the Elements Clause of the Armed Career Criminal Act. So what do we do with- let me put aside- I'll put my cards on the table here. I think this was preserved, so I'm not as interested in the plain error issue. I am interested in the prior panel precedent issue, which I see as different. A very persuasive argument mentioned by both sides here, both the government and the Defendant's Joiner has sort of said that Florida attempt is similar, and I get the syllogism argument of if Florida attempt is similar and attempt is not enough on the federal side, then why wouldn't it be enough here? Why is that logic not persuasive? Joiner quotes Lockley in saying the two are close analogs. Of course, the modifier close lets us know that in some circumstances, they may not be the same. So first, I would challenge the fundamental premise that Joiner has said that they're similar enough for our categorical purposes. Recall that in a categorical context, minute differences matter. Minute differences can lead to divergent results when a categorical analysis is applied. So given that the two are, at best, close analogs, as we've said, taking a look at the case law shows broader differences. Now, you've mentioned this is in a prior panel precedent rule context, and that's crucial here. The... So, I asked a question of both sides, I'm going to ask you the question. And I'm asking you as our amicus, meaning give me, I need the straight answer. Do you know of a case, because I know you've looked at a lot of this, of a case where, in case one, we said a state statute is a violent felony, Supreme Court comes along and says somewhere from a different state or a different jurisdiction is not a violent felony, and at least the name of the statute is similar, and there's some similarities between language. And then case three comes along and we've said that's intervening precedent such that it's an exception to our prior panel precedent rule, and that analog, that statute from our jurisdiction that we're looking at is not a crime of violence. I have not encountered such a case, Your Honor. And you've characterized the prior panel precedent rule correctly as an ironclad rule. It's a very formalist rule where differences in statutes matter. In fact, in the Vega-Castillo case, footnote four, points this court to a case where there were near identical statutes, identical or near identical statutes, and the court still, in applying its prior panel precedent rule, distinguished the two. So let me ask you this question then. What would the Supreme Court have to have said in the United States versus Taylor to abrogate our precedent in Joyner? What would they have had to say in that case? At minimum, Your Honor, they would have needed to describe substantial step more fully. The court said in Taylor, what constitutes substantial step is beyond the scope of this opinion. Instead, they relied on party agreement that it needed to be significant, unequivocal, and importantly, not violent. In order for this to have been directly on point or clearly contrary as we've described our prior panel precedent rule, Supreme Court in Taylor must have explained this applies to other attempt regimes. As was discussed with the previous counsel before you, the attempt regime in Florida is very different and, in fact, prevents a higher bar than the substantial step test for certain acts that constitute the overt act such that an offendant may be found guilty of that offense. And that matters in a categorical context. I'll first describe in the abstract and then move on to in practice. So in the abstract, the difference in the elements, Hobbs Act robbery and Florida attempted armed robbery, they're essentially, they're substantively the same. The only difference is that the Florida statute requires the use of a weapon. Am I correct about that? There are some smaller differences, Your Honor. What are the other differences? Hobbs Act robbery, force against property is enough as well to be convicted of a Hobbs Act robbery. It's actually why in the Eason case, this court held that Hobbs Act robbery, completed Hobbs Act robbery is not a violent felony. Whereas Florida robbery. The only difference that I see is the Florida statute requires the use of the firearm, but you can use a firearm not against the person of another, right? Yes Your Honor. You can just shoot the gun in the air and not at someone else, for example, right? Yes Your Honor. In a categorical context, the way that carrying a firearm is defined in the statutes doesn't draw a substantive distinction if this court were looking at the question anew, without a joiner on the books. However, the governing law of attempt being different makes it so that Taylor's holding, even if it were farther along and had described what it meant, what attempt meant in other contexts. What about the requirement of a physical act? Because Frankie seems to suggest there needs to be a physical act. Every case that I've looked at under Florida law has had some physical act, and yet the physical act was there. There was not, Your Honor. There was no physical act in furtherance of the offense. And does that separate Florida law from the example that the least culpable offense under the attempted object robbery? It does separate Florida law, Your Honor. That wouldn't be abrogation. That would be explicitly overruled. Our prior precedent would be explicitly overruled. And there's also another category called implicitly overruled. That's your example, and in your example, that would be an example of our precedent being explicitly or implicitly overruled. Yes, Your Honor. There is a category of abrogation that does not involve direct overruling. The Taylor court directly overruled St. Hubert as counsel for the government mentioned. However, for abrogation to be implicit, as Your Honor has presented, there must be fatal inconsistency between the two cases. You don't have to have explicit overruling in order to have abrogation, do you? No, Your Honor. The quote that previous government's counsel raised is true, that if it destroys every prior precedent of this court, that can result in abrogation without a direct overruling. But Taylor does not do that for Joyner. There's an elegant phrase in this court's Vega-Castillo case that describes- I'm trying to figure out now the difference, and the only difference that I see is that the Florida statute requires the use of the firearm, but it doesn't require that the use of the firearm be against the person of another. And you're telling me there's a bigger difference than that? Yes, Your Honor. I'll grant to you that the text of the robbery element is similar, although I think Judge Luck and the colloquies have shown that this physical act requirement is very different. But the key distinction between the two statutory frameworks is the differing and governing laws of attempt. The substantial step test under the federal law focuses on the preparation. It asks, has there been acts beyond mere preparation? And the commentaries to the model penal code where this test stems from show that the drafters of the substantial step test was adopted, were striving to create a broader test for attempt than the common law test. However, Florida, as the Hudson case demonstrates and has been discussed here today, Florida retains a common law test for attempt that requires you to proceed farther than you would under a substantial step test. If we start with the statutory language of the attempt statute in Florida, it says that you must do any act toward the commission of such offense, which is where this physical act requirement I think comes from, but fails in the perpetration or is intercepted or prevented in the execution. The statute focused on the execution, on the perpetration of the relevant offense. In other words, you have to actually begin the offense or of course has described it, there must be an appreciable fragment of the offense to constitute attempt or another case, the Moorhead case, you must commence the consummation of the crime. And that matters in a categorical approach. When we're looking for the least culpable conduct, if you have to get farther along in Florida than you do under federal law, the least culpable conduct in each of those is different. Now I think it's enough to look and notice that the relevant regimes of attempt are different to find there's no abrogation. It's a formalist rule, the prior panel precedent rule, and when you draw these distinctions that I think the Summers example and colloquy shows, when you draw these distinctions, that's not there. And say these statutes are too dissimilar because of the elements, because of laws of attempt, therefore our previous precedent has not been abrogated. But it's that closer look at the distinctions and the differences between those two governing laws of attempt that highlights how different they are. I'll address briefly the Taylor hypothetical that's been spoken about by the government's council. In that hypothetical, the relevant forceful element was having a note in your pocket that says your money or your life that the defendant plans to pass to the cashier and it's a bluff. Defendant then crosses the threshold of the store and is apprehended. That same conduct in Florida would not constitute an attempted armed robbery. First, for the reasons that Judge Luck explained, there's no physical act that's in furtherance of the offense. Opposing counsel for the government says that the driving there is enough. So as long as someone took their car from their house over to the bank, even if they stopped at every red light, they stopped at every stop sign, they allowed a good neighbor to come on in on the way to committing this bank robbery, that that is a physical act. Is that a physical act under Florida law? No, no, Your Honor. The way the courts have described the attempt statute and the overt act requirement, you must commence the consummation. Driving there is not the consummation of the offense. In fact, if you only drove to the store and did not have any other forceful element, there's no way for a jury to distinguish between attempted larceny, attempted theft, and attempted robbery. At that point, you haven't begun the essential element of force. Now, you don't have that same issue in the Hobbs Act context because there's no federal statute of general theft or general larceny. So it makes sense that in a federal context, the attempt law can bleed a little bit more broadly. However, in a Florida context, if all you've done is driven there, we don't know whether you're attempting theft or whether you're attempting robbery. And that's why the standard is higher for attempt. You must start the execution or the perpetration of the offense in Florida. I'm trying to figure out how this is going to work out in the future, if we accept your argument. The United States, the government, has stood up here and said that Florida attempted armed criminal act. It should not be used as a predicate based on the Supreme Court's decision in Taylor. But if we say that Joyner has not been abrogated by Taylor, what is the district court to do in the future? What's the district court going to do with that? The district court should follow this court's prior precedent in Joyner. The district court is bound by vertical star is decisive to do so. However, this court's en banc proceeding is designed to do exactly the kind of thing that your Honor is alluding to. If Joyner is wrongly decided as a de novo matter, and really there are two distinct theories of abrogation. I'll bookmark that, get to that in a second. If Joyner is wrong as an initial matter with a fresh look, the en banc court can't. If we go en banc and our en banc court says, no, Joyner has not been abrogated by Taylor, then what is the district court to do? In that situation, the district court would need to follow this court's precedent that the en banc ruling would strengthen Joyner. Now the court is not bound by the prior panel precedent rule, right? So we're, in other words, we're, once you're en banc, you're free of the conversation we're having right now. Right? Exactly. The court would, would be setting Joyner aside, uh, in an en banc proceeding. We wouldn't be free of the conversation if we said en banc that Joyner remains good law, even though the United States is of the position that Joyner is no longer good law. Right, your Honor. You can imagine, uh, an en banc decision that acknowledges Joyner's reasoning in a persuasive way or, or mentions it, uh, in arriving at its fresh conclusion. But certainly en banc, there would be a new categorical inquiry, frankly, that wasn't there in Joyner. Part of the difficulty of this case is that Joyner doesn't have a lot of categorical reasoning. It says by our previous precedent, see Lockley and a few other cases. And given that the defendant has not challenged attempt, categorically attempted armed robbery in Florida. The practical answer to Judge Wilson's question that the way this works in practice is, uh, someone's convicted of a felon in possession. And remember, this is done under Alameda's Torres. In other words, the jury's not finding the prior three felonies. So a PSI is created. The PSI does a criminal background check. It says, here are the three prior crimes. And if two of them are cocaine sales, for example, and one of them is attempted armed robbery, and we have said en banc that attempted armed robbery is a violent felony, then a district court will have to apply the 15 year mandatory minimum enhancement under the armed career criminal act. Right? Right. There's no additional reasoning that would be involved in that kind of a determination. It would be an application of this course precedent. I see my time has expired. May I briefly conclude, your honors? Yes, you may. There's a phrase in the Vega-Castillo case that summarizes why this court can reject Mr. Lightsey's argument. The court there said, the most that can be said of a pellant's argument is that it pits reasoning against holding, but not holding against holding. That's also true here. And for that reason, this court can't affirm the district court's sentence. Thank you. All right. Thank you, Mr. Doman. And Mr. Rosenweig, you've reserved some time for rebuttal. It's Rosen-Sweig, not the peddler. There is an S in the middle that people have been missing for almost 70 years. It's not a problem. I think today demonstrates that we need a lot more time if we're going to discuss this intelligently. My head is about to explode. I just want to touch on two things. Judge Locke spent a fair amount of time about the substantial step test and whether we're advocating, both the government and Mr. Lightsey, for an application of Joyner. And I just want to make it clear that only one thing in Joyner is what we would advocate for. And that's its statement that the federal and the state attempt statutes are the same. It just seems, well, I think it's closely analogous, I think, is the way it's used. Well, it sort of tracks. It just seems, I guess the question I asked the counsel for the government is, it seems anomalous that you're asking us to apply an opinion that you say is abrogated by the Supreme Court. Those just seem inconsistent to me, but maybe they're not. Just as one case can be overturned on other grounds or overruled on other grounds, I think the same is applicable. Yeah, but this is the ground that you want to overrule on. It's this discussion of whether this crime is a crime of violence. That's in the context in which the statement is made. But the statement is made for the principle that it's a correct statement. Is it, though? I believe it is. Can you show me in Florida law where that's a correct statement? Because if you read Hudson, if you read Frankie, it seems to me that that's not a correct statement, but especially if you read it as the same as opposed to analogous. Yeah, all right, certainly analogous, if not identical. But I wouldn't go against it, even though I think the problems with Joyner are twofold. And we never really got into abrogation and what's required. I think the cases that have the intervening Supreme Court decision needs to be on point. And as counsel brought up the Vega Castillo case. It's directly on point or clearly on point is what we've said. Directly or clearly. And as Your Honor authored in the Vega Castillo opinion, the intervening Supreme Court case must eviscerate or completely demolish the props in the case we're looking to abrogate. In this case, Joyner. And I think that's true. And you can go back to Archer, which illustrated that there were cases where this court ruled that prior decisions here and in the Supreme Court abrogated or decided were no longer good law or overruled. It doesn't have to be the word abrogated. And I think that you get there because in Joyner, first of all, let's start with Taylor. Taylor didn't set forth a new rule or a new mode of analysis. They said whether you're looking at a completed armed robbery or an attempted armed robbery, you still employ the categorical approach. And you employ it in the same way in both cases, in both types of crimes. Joyner's problem or problems was one, it's not a question that it didn't apply properly the mode of analysis required by the categorical approach. It's that it employed, and counsel pointed this out, it employed no analysis whatsoever. The syllogism that the Supreme Court rested on was the fact that, like in Florida, there's a presumption, and I think we can go back to St. Hubert for that presumption, that violent felonies are encompassed not only by the completed crimes, but also the attempts. And that because the completed crime has already been clearly ruled to be a violent felony, so is the attempt crime. And I think that that's important. It's not that we didn't employ the correct analysis, we employed no analysis. And Taylor says that for attempt crimes, you must employ the categorical approach in the same manner that you would for an attempt. I thank the Court, and again, Mr. Leitze requests that his sentence be vacated and remanded. Thank you. And Mr. Rosenzweig, I see that you were appointed to represent Mr. Leitze, and the Court thanks you for your service. And we would also like to thank Mr. Doman, who was court-appointed for amicus for the District Court. The Court thanks you for your service, Mr. Doman, and we also thank the government for appearing today for the argument. Thank you.